Jeffrey N. Gesell (State Bar No. 200174)
jgesell@jonesturner.com
William S. Hoang (State Bar No. 269791)
whoang@jonesturner.com
JONES TURNER, LLP
2 Venture, Suite 220
Irvine, California 92618
Tel: 949-435-4100
Fax: 949-435-4105

Attorneys for Plaintiff
WEST AMERICAN INSURANCE COMPANY

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WEST AMERICAN INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>U.S.P. FURNITURE CORP., a California corporation<br><br>Defendant. | CASE NO.<br><br>**COMPLAINT FOR DECLARATORY RELIEF** |

Plaintiff West American Insurance Company ("West American") alleges as follows:

## **PARTIES and JURISDICTION**

1.  This action is a civil action of which this Court has original jurisdiction under 28 U.S.C. section 1332 in that it is a civil action between citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

2. West American is, and at all times herein mentioned was, an Indiana corporation with its principal place of business in Boston, Massachusetts, duly authorized to do, and doing, business in the State of California.

3. Defendant U.S.P. Furniture Corp. ("U.S.P.") is, and at all times herein mentioned was, a California corporation with its principal place of business in the City of Industry, California.

4. Unless otherwise alleged, whenever reference is made in this Complaint to any act of any corporate or other business defendant, such allegation shall mean that such corporation or other business did the acts alleged in this Complaint through its officers, directors, employees, agents and/or representatives who were acting within the actual or ostensible scope of their authority.

5. This Court has jurisdiction to hear the claims alleged in this Complaint and is a court of competent jurisdiction to grant the relief requested.

## VENUE

6. Venue is proper in this District under 28 U.S.C. section 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## FACTS

**THE INSURANCE POLICY**

7. West American issued a commercial policy to U.S.P. under policy number BKW (19) 58 50 92 22, providing coverage for the property located at 505 S. 7th Ave. in City of Industry, California, for the period from February 6, 2018 to February 6, 2019 (the "Policy"). The Policy, as well as the coverages afforded thereto and the applicable premium costs, were the product of negotiations between and/or on behalf of West American and U.S.P. An endorsement dated July 30, 2018 added a new location at 15530 Salt Lake Avenue in City of Industry, California.

///
///

**THE INSURANCE APPLICATION AND PRIOR LOSS**

8. Heights Insurance Group, Inc. d/b/a KCAL Insurance Agency ("KCAL") is an insurance agency. KCAL is an authorized agent for West American and is authorized to propose specific classes of insurance coverage under West American policies in accordance with restrictions set forth in guidelines issued by West American. At all relevant times, KCAL was given limited authority by West American to evaluate applications for insurance policies and to transmit insurance applications to West American.

9. In January 2018, Jonathan Wu of KCAL received a telephone call from Meir Bram, the CEO of U.S.P. Mr. Bram requested a proposal for a commercial package insurance policy for U.S.P. Prior to this January 2018 call, Mr. Bram had only utilized the services of KCAL to obtain workers' compensation insurance for a separate entity, Container Furniture Direct, Inc. ("C.F.D."), for which Mr. Bram was also an officer or employee. Mr. Bram also specifically informed Mr. Wu that he would not be using C.F.D. – as an entity – any longer and therefore he did not need any coverages for C.F.D.; he only needed insurance for U.S.P.

10. During the January 2018 call, Mr. Bram informed Mr. Wu that U.S.P. was the only company for which he wanted a quote for a commercial package insurance policy. At the time of this call, Mr. Wu was not aware of Mr. Bram's involvement – as an officer, employee, or otherwise – in any other companies besides U.S.P. and C.F.D.

11. Based on communications between Mr. Bram and Mr. Wu, Mr. Wu reported, among other things, the following to Mr. Wu: (1) that U.S.P. was a "new venture"; (2) that there were no additional interests or interested parties to be added or modified with the transaction; (3) that U.S.P. did not have any subsidiaries, nor was U.S.P. a subsidiary of another entity; and (4) that U.S.P. had not been non-renewed or cancelled by any other insurance carriers during the past three years.

12. On the basis of Mr. Bram's representations and materials he submitted on behalf of U.S.P., Mr. Wu believed, in or around January and February 2018, that U.S.P. fell within the guidelines that permitted KCAL to submit an application for a commercial package insurance policy to West American. Accordingly, Mr. Wu assisted Mr. Bram in completing and submitting a signed application for a West American commercial package insurance policy. The application was submitted in February 2018.

13. True and correct copies of relevant pages of a signed application submitted on behalf of U.S.P. for a West American commercial package insurance policy are attached hereto as Exhibit A (the "Application") and are incorporated herein by reference. Mr. Bram has confirmed, under oath, that he signed every page of the Application. As is reflected in the Application, Mr. Bram represented that U.S.P. had no prior loss history.

14. A true and correct copy of a KCAL "STATEMENT OF NO LOSS" form signed by Mr. Bram is attached hereto as Exhibit B and is incorporated herein by reference. The KCAL "STATEMENT OF NO LOSS" form indicates that the signatory is "not aware of any losses, accidents or circumstances that might give rise to a claim under the insurance policy whose number is shown above . . ." from October 20, 2017 to February 9, 2018.

15. In fact, another of Mr. Bram's companies, U.S. Pride Furniture, Inc. ("U.S. Pride"), did sustain a prior water loss at the 505 S. 7th Ave. premises in May of 2017. That May 2017 water loss was sufficiently significant that U.S. Pride's prior carrier, Nationwide, issued claim payments for the water loss totaling $2,290,824.61. At no time prior to West American's issuance of the Policy to U.S.P. was Mr. Wu or KCAL ever made aware that Mr. Bram's company, U.S. Pride, had sustained a prior water loss. Neither Mr. Bram nor any other representatives of U.S.P., U.S. Pride or Container Direct ever informed Mr. Wu or KCAL that U.S. Pride had sustained a prior loss.

16. Mr. Bram has testified under oath that U.S.P. and U.S. Pride are affiliated companies, as Mr. Bram owns 100 per cent of each of those companies. Mr. Bram has also testified under oath that U.S.P. is essentially a d/b/a of U.S. Pride, that he does not "distinguish between U.S.P. to U.S. Pride," and that employees were generally shared between U.S.P. and U.S. Pride because they are "all working for the same entity basically."

17. At no time prior to the issuance of the Policy did Mr. Bram nor any other representative of U.S.P., U.S. Pride, or CFD ever inform Mr. Wu, KCAL, or West American that U.S. Pride had sustained a prior loss. Further, Mr. Wu, KCAL, and West American were not aware of the existence of U.S. Pride at the time the Policy was placed.

18. As the documents provided by KCAL and U.S.P. demonstrate – and as Mr. Bram's testimony under oath acknowledges – U.S. Pride sustained a $2,290,824.61 water loss in May 2017; approximately five months after that water loss Mr. Bram created a new corporation, U.S.P., which he testified is essentially a d/b/a of U.S. Pride; U.S.P. was created approximately three months before U.S. Pride's 2017-2018 policy issued by Nationwide was scheduled to terminate; approximately three months after U.S.P. was created, Mr. Bram applied for insurance with a new company, West American, through KCAL, whom he had not previously used to place property insurance; he advised KCAL that he only wanted insurance for U.S.P. and not for any other entities – and he did not advise KCAL of the existence of U.S. Pride or of the May 2017 water loss; Mr. Bram advised KCAL that there were no additional interests or interested parties to be added with that transaction and that there were no other business interests or activities of the named insured, U.S.P.; and Mr. Bram did not obtain separate property insurance for U.S. Pride for the February 2018 – February 2019 policy period.

19. KCAL and Mr. Wu relied on Mr. Bram to inform them whether any company for which U.S.P. was essentially a d/b/a had sustained a prior water loss

within the past three years at 505 S. 7th Ave. in City of Industry, California. If Mr. Wu had known that U.S. Pride – for which U.S.P. is essentially a d/b/a – had sustained a $2.29 million water loss less than a year before the Application, he would not have been able to offer a West American policy to Mr. Bram for U.S.P. At the very least, if Mr. Wu had known that Mr. Bram was seeking coverage for a d/b/a of another company that had sustained a $2.29 million water loss less than a year before the February 6, 2018 insurance application, he would have been required, per West American's guidelines and KCAL's guidelines, to ask for the loss history of that d/b/a – which would have affected whether West American would offer a quotation to that d/b/a. In fact, had it been apprised of those facts, West American would not have chosen to provide coverage to U.S.P.

**NON-RENEWAL OF PRIOR INSURANCE POLICY**

20. At the time he assisted U.S.P. in preparing the Application, Mr. Wu also relied on Mr. Bram to inform him and KCAL whether his companies had been previously cancelled or non-renewed by insurance carriers.

21. Based on Mr. Bram's representations, Mr. Wu understood that none of Mr. Bram's companies had any prior insurance policies cancelled or non-renewed. However, documentation provided by U.S.P. after the Policy had been issued indicates that another carrier, Nationwide, had notified U.S. Pride before the Application was submitted that a policy Nationwide issued to U.S. Pride had been cancelled at Nationwide's request.

22. If. Mr. Wu had known that one of Mr. Bram's companies had been previously cancelled or non-renewed, he would not have been able to offer a West American policy to Mr. Bram for U.S.P. At the very least, if Mr. Wu had known that Mr. Bram was seeking coverage for a d/b/a of another company that had been cancelled or non-renewed, he would have been required, per West American's guidelines and KCAL's guidelines, to ask for additional information about the companies and their relationship – which would have affected whether West

American would offer a quotation to that d/b/a. In fact, had it been apprised of those facts, West American would not have chosen to provide coverage to U.S.P.

23. Mr. Bram failed to inform KCAL of Nationwide's cancellation of the U.S. Pride policy, despite the fact that Mr. Bram apparently knew or should have known of Nationwide's cancellation of the U.S. Pride policy prior to his submission of the application to West American.

## INSURANCE CLAIMS

24. U.S.P. has submitted a claim under the Policy for loss or damage attributed to a fire that occurred on October 27, 2018.

25. U.S.P. has also submitted a claim under the Policy for loss attributed to a theft that allegedly occurred on October 11, 2018.

26. U.S.P. claims that it has sustained over $6 million in losses or damages as a result of the above-mentioned October 2018 losses. U.S.P. seeks that amount from West American.

## NOTICE OF RESCISSION

27. The Policy provides in pertinent part:

> **A. CONCEALMENT, MISREPRESENTATION OR FRAUD**
>
> This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:
>
> 1. This Coverage Part;
> 2. Covered Property;
> 3. Your interest in the Covered Property; or
> 4. A claim under this Coverage Part.

28. Mr. Bram's failures to inform KCAL – and, by extension, West American – of the facts set forth above constitute concealment and/or misrepresentation of material facts in his application for the West American Policy.

29. Had West American been apprised of the facts of U.S. Pride's May 2017 Loss, and/or of Nationwide's cancellation, West American would not have issued the Policy to U.S.P.

30. Therefore, based on the material misrepresentations and/or concealments described and discussed above, on September 27, 2019, West American sent a letter to U.S.P. notifying U.S.P. that West American was rescinding the Policy (the "Rescission"). A true and correct copy of this letter is attached hereto as Exhibit C and is incorporated herein by reference.

31. Pursuant to the Rescission, West American is providing a check to U.S.P. in the amount of $18,706.33, reflecting a full refund of the premium paid (in the amount of $16,034), together with interest since February 6, 2018.

## FIRST CLAIM FOR RELIEF

(Declaratory Relief)

32. West American realleges and incorporates by reference the allegations in paragraphs 1 through 31, above.

33. An actual case or controversy has arisen between the parties. West American has rescinded the Policy and maintains that the Policy and all provisions thereof are void and of no force and effect. U.S.P. has submitted two separate claims under the Policy and contends that West American owes policy benefits.

34. West American seeks a declaratory judgment from this Court that the Policy is rescinded, that West American's rescission was proper, that the policy is void ab initio and that all provisions thereof are void and of no force and effect – and, consequently, West American does not owe U.S.P. policy benefits.

///

///

## PRAYER

WHEREFORE, West American prays for judgment against U.S.P. as follows:

1. For a determination and order that the Policy has been rescinded;
2. For a declaration that West American's rescission was proper, that the policy is void ab initio and that all provisions thereof are void and of no force and effect – and, consequently, West American does not owe U.S.P. policy benefits;
3. For costs of suit incurred herein; and
4. For such other and further relief as the Court deems just and proper.

DATED: September 30, 2019          JONES TURNER, LLP


*/s/ Jeffrey N. Gesell*
Jeffrey N. Gesell
William S. Hoang
Attorneys for Plaintiff WEST AMERICAN INSURANCE COMPANY